*786 OPINION.
Littleton:
The issues presented are (1) whether the petitioner was .a personal service corporation, (2) whether gross income for the year should be reduced in the amount of $11,707.50, representing $7.50 a share paid The Insurance Corporation on the number of shares which the petitioner had not sold to the public at the end of the year, (3) whether the gross income resulting from a profit of $12.50 a share on each share of The Insurance Corporation’s stock sold during the year should be reduced in the amount of $16,245.83, representing $4.16% a share, on account of the agreement to pay J. J. Howard a bonus of $25,000 upon the completion of the contract with The Insurance Corporation, (4) whether unpaid promissory notes given by purchasers of The Insurance Corporation stock in the amount of $2,562.50 at the end of the year should be excluded from gross income, and whether petitioner realized a taxable profit of $5,025 upon the exchange of 402 shares of The Insurance Corporation’s stock, costing it $37.50 a share, or $15,075, for its 201 shares of preferred stock which it had theretofore sold for $100 a share or $20,100.
The Board is of the opinion that the petitioner was not entitled to classification as a personal service corporation for 1919. The record discloses that stockholders owning about 32 per cent of stock outstanding during the taxable year devoted their entire time to the business; stockholders owning 47 per cent of stock were not regularly engaged in the active conduct of the affairs of the corporation. The services rendered by them consisted principally of suggesting the names of persons who might purchase stock. Some of this group served as officers and directors but each was engaged in business entirely unrelated to that of petitioner to which he devoted the greater part of his time. The balance of the stockholders, owning 21 per cent of the stock, devoted no time to petitioner’s business. The salesmen who were not stockholders were employed and were responsible for about 15 per cent of the stock sales during the year. In these circumstances, it can not be said that petitioner’s income may be ascribed primarily to the activities of its principal stock *787 holders. Petitioner used $45,000 of its capital with which to make the initial payment on the purchase by it of 6,000 shares of stock of The Insurance Corporation without which it would not have had the stock to sell. In addition petitioner used its capital to pay commissions and salaries. In these circumstances, we are of opinion that capital was a material income-producing factor.
We fail to find merit in petitioner’s claim that gross income for 1919 should be reduced in the amount of $11,707.50, representing $7.50 a share paid The Insurance Corporation for stock which the petitioner had not sold at December 31, 1919. In 1918 the petitioner purchased 6,000 shares of stock at $37.50 a share and made a cash payment of $45,000 equal to $7.50 a share. This stock was issued to the petitioner and endorsed by it in blank and returned to the corporation as a guarantee for the payment of the remaining purchase price of $30,000. The option given The Insurance Corporation to declare a forfeiture of the cash payment in the event, the balance on the purchase price should not be paid on or before January 1, 1922, could not have been exercised under the- conditions existing during and at the end of the year 1919. The petitioner was not therefore entitled to reduce the profits on the sale of stock made to the public during the year by any portion of the amount which it had paid or obligated itself to pay for the shares of stock which had not been sold at December 31, 1919.
The agreement of the petitioner, embodied in the resolution adopted in 1918, to pay J. J. Howard $25,000 upon completion of the contract with The Insurance Corporation did not give rise to a deduction from gross income for 1919. The petitioner’s liability for any amount under this contract was dependent entirely upon future contingencies. The contract did not provide, and there is no evidence to show, that Howard was to receive $4.16% of the profit on each share of stock sold. The amount was payable in whole or not at all. The decision of the Board in the Appeal of Block & Kohner Mercantile Co., 4 B. T. A. 673, is to be distinguished from this case. There the contract provided that one-third of the profits for three years should belong to Weinbach, and that such portion of the profits, subject to adjustment on account of losses "over'the period, should be paid -to him upon the expiration of the contract. There was no such understanding between the petitioner, and Howard. The petitioner merely agreed that if Howard should succeed in selling the 6,000 shares of The Insurance Corporation stock it would, upon the happening of that contingency, pay him á bonus of $25,000. In the opinion of the Board no portion of the $25,000 was a proper deduction from gross income for 1919 as an incurred expense. Appeal of Wm. J. Ostheimer, 1 B. T. A. 18; Appeal of Consolidated Asphalt Co., 1 B. T. A. 79; Appeal of Uvalde Co., 1 B. T. A. 932; *788 Appeal of Morrison-Ricker Mfg. Co., 2 B. T. A. 1008; Appeal of Gude Brothers, Kiefer Co., 2 B. T. A. 1029.
We are of opinion that the amount of $2,562.50, representing the face value of interest-bearing promissory notes given by purchasers of stock and held by the petitioner on December 31, 1919, should be included in determining the profit upon the stock sold during the year. The petitioner had the right under its contract with The Insurance Corporation to endorse these notes to that corporation and receive credit on its obligations for their face value, and this was done in many cases. The petitioner entered the notes upon its books as “ accounts receivable ” and accrued a profit of $12.50 a share on each share of stock sold, and the Commissioner has made his determination upon this basis.
We are of opinion that the petitioner realized no taxable gain when it purchased its own preferred stock at a cost to it of $5,025 less than its stockholders had theretofore paid for it. This was wholly a capital transaction. Appeal of Simmons & Hammond Mfg. Co., 1 B. T. A. 803; Appeal of F. Tinker & Sons Co., 1 B. T. A. 799; Appeal of Farmers Deposit National Bank, 5 B. T. A. 520; Appeal of Interurban Construction Co., 5 B. T. A. 529; Appeal of Ruckman Coal Co., 5 B. T. A. 534.
The petitioner’s return for 1919 showed a net income of $55,354.53. The difference between this net income and the net income of $42,395.17 which we have found for the year 1919 consists of 1918 profits on the sale of The Insurance Corporation’s stock included in the 1919 return, failure to take the proper amount of depreciation for exhaustion, wear and tear of furniture and fixtures, and the $5,025 included by the petitioner as a profit on the purchase of its own stock.
The deficiency should be computed in accordance with the foregoing findings of fact and opinion.

Judgment will be entered on 15 days' notice, under Rule 50.